U. S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF ARKANSAS**

SEP 17 2008

CHRIS R. JOHNSON, CLERK

BY

DEPUTY CLERK

**CURT WOLFE AND PENNEY WOLFE**
**AS NEXT FRIENDS FOR W.W.**                                                               **PLAINTIFF**

Case No. 08-5205

**FAYETTEVILLE, ARKANSAS**
**SCHOOL DISTRICT and**
**BYRON LYNN ZEAGLER**                                                                      **DEFENDANTS**

**COMPLAINT**

*COMES NOW*, the Plaintiff, W.W. (hereinafter "WW") by and through his next friends,

his father, Curt Wolfe  (hereinafter "Father"), and mother, Penney Wolfe (hereinafter

"Mother") (collectively referred to as "Parents"), and by his attorneys, the Doss Law Firm, P.A.,

and for his Complaint against the Defendants, Fayetteville, Arkansas School District and Byron

Lynn Zeagler, states the following to wit:

PARTIES

1.  The Plaintiff, WW, is a male under the age of eighteen, a natural person, and a resident

of Washington County, Arkansas.  He appears by and through his next friends, natural

Father, Curt Wolfe (hereinafter "Father"), and natural Mother, Penney Wolfe

(hereinafter "Mother") who are also residents of Washington County, Arkansas.

2.  The separate Defendant; Fayetteville, Arkansas School District (hereinafter

"Fayetteville School District") is an accredited school in Washington County, Arkansas,

the boundaries of which include the City of Fayetteville, Arkansas.  Service of process

can be made upon the Fayetteville School District by mailing service to Superintendent

Bobby New at PO Box 849 Fayetteville, AR 72702-0849 or by personally serving Bobby

Dockets.Justia.com

New at 1000 West Stone Street, Fayetteville, AR 72701. Under information and belief, the Fayetteville School District is a recipient of federal financial assistance.

3. The separate Defendant, Byron Lynn Zeagler (hereinafter "Zeagler"), was the Vice Principal at Woodland Junior High School for the 2005-06 and the 2006-07 school years. Currently, Zeagler is the Vice Principal at the Fayetteville High School, a position he assumed during the 2007-08 school year. Zeagler is sued in his official and individual capacity. Service of process can be made upon Zeagler at 3456 E Township St Fayetteville, AR 72703-4794.

## JURISDICTION AND VENUE

4. Subject matter jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1343 and 1331. Further, this Court has jurisdiction under 28 U.S.C. § 1367 to hear WW's state law claims in that all claims made herein are so related to each other that they form part of the same case or controversy under Article III of the United States Constitution.

5. This Court has personal jurisdiction over Zeagler and the Fayetteville School District (collectively referred to as "the Defendants") as the unlawful acts alleged in the Complaint were committed in Washington County, Arkansas, which lies within the Western District of Arkansas. In addition, the Defendants have established at least minimum contact with the Western District of Arkansas and the State of Arkansas.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as a substantial part of the events and/or omissions giving rise to WW's claims occurred in Washington County, Arkansas, which lies within the Western District of Arkansas, and because the

Defendants operate or perform their duties and responsibilities within the Western District of Arkansas.

## GENERAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

7.  WW was a student at McNair Middle School (hereinafter "McNair") from August 2003 until May of 2005.

8.  WW was a student at Woodland Junior High School (hereinafter "Woodland") from August of 2005 until May of 2007.

9.  Although WW is no longer a student at Fayetteville High School (hereinafter "FHS"), he was a member of the class of 2010.

10. The Fayetteville School District's Policies and Procedures Handbook at all times pertinent to this litigation states that sexual harassment and bullying of a student will not be tolerated and is a violation of Fayetteville School District Policy.

11. On information and belief, school administrators have a policy of investigating and punishing student-on-student sexual harassment when it involves a male harassing a female.

12. On information and belief, school administrators have a policy of investigating and punishing bullying claims as required by Arkansas Law under Ark. Code Ann. § 6-18-514, Antibullying Policies.

13. In the numerous physical and threatened assaults of WW, Fayetteville School District failed to comply with the requirements of Ark. Code Ann. § 6-17-113, Duty to Report and Investigate Student Criminal Acts.

## SEVENTH GRADE

14. On October 8, 2004, a young man approached WW and threatened to jam a pencil in WW's "f*cking neck." The threat was reported by email to the administration on the same day.

15. While attending McNair, on November 11, 2004, WW was attacked on a Fayetteville school bus by C.G. ("CG") and C.C. ("CC"). WW suffered a concussion from the attack. WW was immediately suspended by McNair's principal based upon other students' accounts of the altercation that WW was the aggressor. WW asked that McNair's principal review the video tape on the bus prior to suspending WW, but McNair's principal declined. The principal stated that he would rely on the other students' statements. After WW served part of his suspension, at the insistence of WW's Parents, McNair's principal reviewed the video tape and determined that WW was the victim. WW's suspension was lifted. The Fayetteville School District failed to inform the Fayetteville Police Department of the incident, which is a violation of its own bullying policy as well as Ark. Code Ann. § 6-17-113, <u>Duty to Report and Investigate Student Criminal Acts</u>.

16. Between August and November of 2004, a couple of students at McNair began referring to WW as a "Fag" and a "Homo." These references to WW's sexual preference were reported to McNair's administrative office. McNair officials did nothing to stop the harassment.

17. While WW attended McNair, the harassment worsened. On January 27, 2005, a minor, J.W. (hereinafter "JW"), telephoned WW and asked if WW would like to purchase a

"hairy dildo." WW immediately informed his mother of JW's solicitation and WW's
Mother telephoned JW's guardian.

18. Subsequently, on January 28, 2005, JW solicited a list of 20 kids that had agreed to
physically harm WW, and informed WW of such a list.

19. Also, on January 28, 2005, WW's Mother informed McNair's principal that JW had made
a sexually explicit phone call to WW and that JW had solicited a list of kids to physically
harm WW. McNair's principal stated that he knew about the list.

20. On January 31, 2005, while WW was in the bathroom at McNair, JW peered over the
stall at WW's genitalia. JW made remarks about the size of WW's genitalia and called
WW a "faggot." Upon leaving the stall, JW physically assaulted WW while other
students held WW against his will. WW was sent to the school nurse because of
swelling on his face and eye. The Fayetteville School District failed to inform the
Fayetteville Police Department about the incident or take other actions in violation of its
own bullying policy and Ark. Code Ann. § 6-17-113, Duty to Report and Investigate
Student Criminal Acts.

21. On or about February 9, 2005, while WW was gathering WW's belongings from WW's
locker, C.S. (hereinafter "CS") shoved WW into the locker and called WW a "fag." WW's
Mother complained about this incident to McNair's principal, but no action was taken
against CS to deter further actions of a similar nature.

22. On or about April 6, 2005, CS shoved WW into WW's locker, again, and called him a
"homo." This incident was reported to McNair's principal, but to the best of WW's
Parents' knowledge, nothing was done to deter CS's conduct.

23. On April 17, 2005, JW taunted WW outside of his home, calling him "b*tch", "ass hole", "queer bait" and "pussy." The taunts were reported to the school administration by email and based upon information and belief, no action was taken.

## EIGHTH GRADE

24. From August of 2005 through May of 2006, the students at Woodland repeatedly harassed WW by pushing him up against lockers and calling him names like "cat killer" and "faggot." WW's Mother and Father reported this harassment to Zeagler, but Zeagler failed to discipline the students harassing WW.

25. On or about October 14, 2005, another student, J.D. (hereinafter "JD"), began calling WW a "faggot" in front of the entire class. WW reported this to the teacher, yet the teacher refused to take any action to punish JD.

26. On or about May 10, 2006, B.B. (hereinafter "BB"), assaulted WW in the middle of shop class. BB punched WW with no warning and with such force that WW was knocked out cold. WW was taken to the emergency room and later underwent oral surgery. No report of this assault was made by the Fayetteville School District, which is a violation of Ark. Code Ann. § 6-17-113, Duty to Report and Investigate Student Criminal Acts, and the Fayetteville School District's Bullying Policy.

27. Zeagler informed WW's Mother that he was not going to call the police, because WW "got what he deserved" as BB informed him that according to other students, WW had made a statement about BB's dead mother. WW did not make any statement about BB's dead mother, however in effort to get BB to punch WW; other students at Woodland informed BB that WW made such a statement.

28.  Outside of school on May 24, 2006, WW was jumped and severely beaten by three of
     his classmates at Gulley Park in Fayetteville, Arkansas. WW suffered numerous injuries.
     His cartilage separated from his ribs and his face and body were bruised from being
     repeatedly kicked and punched. WW's eye glasses were also broken. WW's Parents
     reported the attack to the police and the classmates were subsequently prosecuted for
     assault and battery. This is the only assault of WW that was prosecuted and it was the
     only assault of WW that occurred outside the jurisdiction of the Fayetteville School
     District. This assault was reported to the Fayetteville School District, and upon
     information and belief, no action was taken, which is a violation of its bullying policy.
     WW's Parents' reports of the assault and harassment to the school administrators were
     ineffective, as C.W. ("CW"), one of the perpetrators, continued to harass WW in the
     halls of the school.

## NINTH GRADE

29.  During the months of August, September, October, and November of 2006, the
     harassment by students attending school with WW became increasingly worse as
     Zeagler and the Fayetteville School District failed to punish students for calling WW a
     "homosexual," a "faggot," and a "cat killer."

30.  On December 3, 2006, on a social networking website entitled, "Facebook," a group of
     students formed a group within Facebook entitled, "Everyone Hates [WW's name]."
     The photo representing the group was one of Randy Constan, a Peter Pan impersonator.
     However, the face of Randy Constan was removed from the photograph and WW's face

was digitally put in its place. The word, "homosexual," was typed in capital letters across the photograph.

31. On December 4, 2006, WW's Mother reported the "Everyone Hates [WW's name]" Facebook group to the Fayetteville School District and Zeagler. Upon viewing the Facebook group, Zeagler asked WW's Mother, "Well, is he a homosexual?" Zeagler then informed WW's Mother that he was not going to do anything about the Facebook group, although it was clearly a criminal violation under Arkansas' Cyber Bullying Act found in the Antibullying Policies, under Ark. Code Ann. § 6-18-514(b)(2)(B), which is contained in the Fayetteville School District's Bullying policy. Such communications also constituted Unlawful Computerized Communications, under Ark Code Ann. § 5-14-108, and Harassing Communications, under Ark. Code Ann. §5-71-209. Additionally, threats of violence were made, which the Fayetteville School District is required to report under Ark. Code Ann. § 6-17-113, Duty to Report and Investigate Student Criminal Acts.

32. On the "Everyone Hates [WW's name]" Facebook group, one female student stated: "arr, he [WW] used to sit by me in science. Luckily his homosexual ass moved to the back." A male student stated, "remember I yealled [sic.] f*ck you to him and Ms. Wilf didn't care.....then I hit him in the face with a news paper." Also, a female student stated, "hahah KICK HIS ASSSS -- !!!" Nowhere within this Facebook group do any of the students state that WW is a bully or that he had done anything to cause this hateful speech.

33. WW's Parents ultimately reported the "Everyone Hates [WW's name] Facebook group to the Fayetteville Police Department and the Fayetteville Police Department

Page 8 of 33

threatened prosecution if the students did not remove the Facebook group. The

Facebook group was not fully removed until April of 2007. No participants were

prosecuted.

34. On or about March 7, 2007, W.S. (hereinafter "WS") posted on another Facebook group,

in reference to WW, that "everybody is going to kick his ass."

35. On or about March 8, 2007, WS posted within another Facebook group entitled "I Love

Watching Fights at School" that:

> *"and haha who said i was gonna touch him? haha nah I got people that
> are gonna do it 4 me...and i aint sayin no names so dont even ask =]* and
> yeah i got friends too 20 year old ones=] haha how lame [WW's name]
> cant even stand up for himself...hes got to have his girlfriend to it for
> ahaha wow what a pussy" (emphasis added).

36. The very next morning, on March 9, 2007, WW's Mother reported the threats and

delivered the internet posts to Zeagler. Zeagler informed her that there was nothing he

could do as "students said things all the time."

37. On the afternoon of March 9, 2007, WW was approached by WS after class. While WS

was speaking with WW, another student, I.T. (hereinafter "IT"), punched WW in the

face, just as WS' internet posts proclaimed would happen. IT punched WW with such

force that WW was knocked unconscious. WW's Mother requested that Zeagler report

this incident to the Fayetteville Police Department. Zeagler refused. The failure to

report this act and the threat of violence in the internet posts is a Class C Misdemeanor

in violation of Ark. Code Ann. § 6-17-113, Duty to Report and Investigate Student

Criminal Acts, and the Fayetteville School District's anti bullying policy. Additionally, the

internet posts constitute Harassing Communications, under Ark. Code Ann. § 5-71-209

and <u>Unlawful Computerized Communications</u>, under Ark. Code Ann. § 5-41-108, which

are both Class A Misdemeanors.

38. As WW's Mother arrived to pick up WW after IT's assault, she was greeted with the

following taunts from students of Woodland: "we beat the f*ck out of [WW's name]"

and "hey lady, you suck d*ck." The latter taunt was stated by A.W. ("AW") in the

presence of WW. WW's Mother informed Zeagler and other administrators of the

students' taunts. Zeagler and other administrators, upon information and belief, failed

to punish the students.

39. An eyewitness to the IT attack stated to her mother:

> a big boy just turned around and punched [WW's name] in the face with his fist
> so hard it knocked him to the floor. She said [WW's name] had done nothing to
> this boy whom she did not know. The teachers stuck their heads out of the
> doors and said "kids cut it out." They ignored the attack. This angered her and
> she wanted to say something to the big boy that hit [WW's name], but she was
> too scared.

40. Also, on the evening of March 9, 2007, within the Facebook group entitled "I Love

Watching Fights at School" WS boasted about IT knocking WW unconscious:

> aight so just after 6th period today some lil b*tch comes up to me and
> gets in my face sayin i was talkin sh*t about his mom and i tell him i aint
> said sh*t, so then he pushed me and my friend that was walkin behind
> me gets between us to keep me from punchin his lil ass, well then the kid
> that got up in my face pushed my friend and i was like oh hell no, and
> then my friend just clocks this little b*tch right in his jaw and ends up
> bustin out 1 or 2 of his teeth and this little hoe just drops to the floor and
> just like passes the f*ck out or just starts ballin idk but it was funny as
> sh*t!!! i'm a little mad that i didnt get a punch in b/c a teacher was like
> right around the corner.....agh d*mn i wish i could of

This internet post was delivered to Zeagler by WW's Mother on or about March

12, 2007.

41.  On or about March 14, 2007, the day WW returned to school after recovering from the IT assault, Zeagler pulled WW out into the hallway and searched WW by patting down WW's entire person and searching his wallet in order to find an IPOD. This search was performed contrary to Fayetteville School District policy with no witnesses present. The IPOD was not found on WW. C.D. (hereinafter "CD"), the owner of the IPOD states that the teacher in the classroom had actually confiscated his IPOD.

42.  Also on March 14, 2007, after first period, Zeagler reported to the Fayetteville Police that WW allegedly made a threat to get even with IT. WW's Father met with Zeagler after the report was made to the police and Zeagler neither told him that he had made a report on WW nor that WW had made a threat. WW did not make such a threat.

43.  In addition to the earlier alleged threat, on the evening of March 14, 2007, the School Resource Officers were dispatched to WW's home because the Fayetteville School District reported that WW was threatening to bring a gun to school. The Fayetteville Police Department and the School Resource Officers found that WW had no intention of bringing a gun to school and that there was no legitimate threat.

44.  On March 16, 2007, after Zeagler refused to report the assault by IT and WS, WW's Mother reported the incident involving IT and WS to the Fayetteville Police Department. Detective Travis Lee (hereinafter "Lee") investigated the incident. Zeagler's refusal to report the incident is a violation of the Fayetteville School District's anti bullying policy and Ark. Code Ann. § 6-17-113, Duty to Report and Investigate Student Criminal Acts.

45. Furthermore, C.T. ("hereinafter "CT"), IT's brother, continued to harass WW in the halls by stating "my brother whipped your ass." This was reported by email to the Fayetteville School District and under information and belief, no action was taken.

46. On March 26, 2007, Lee met with Woodland principal, Anita Lawson, and Zeagler about the incident involving IT and WS. With the intent to illegally influence a police investigation, Zeagler told Lee that he did not call the Fayetteville Police Department about the incident because "both parties were involved." Zeagler knew this was a false statement, as IT and WS were suspended over the incident, but not WW. Zeagler also had knowledge of the internet posts by WS predicting and boasting about the assault of WW.

47. In an effort to bolster the decision of Zeagler and the Fayetteville School District to not report the assaults, Zeagler provided his unofficial handwritten notes to illegally influence and suppress Lee's investigation. If Lee's investigation would have proceeded, the culpability of the Fayetteville School District and Zeagler in violating the criminal laws of the State of Arkansas would have been exposed. These personal notes included, among other unfounded allegations that WW had threatened to bring a gun to school. Zeagler knew that this statement had not been proven and provided it to Lee anyway. No action was taken against WW for the supposed threat. Zeagler did not provide Lee with either official or unofficial disciplinary notes concerning the attackers, WS and IT.

48. The unofficial handwritten notes that Zeagler provided to Lee concerning WW are in contrast to WW's official Individual Education Plan (hereinafter "IEP"), which state that

WW is not a discipline problem. As evidenced by Zeagler's signature on the documents,

Zeagler approved the IEP records just a month previously in his capacity as a member of

WW's IEP committee.

49. Specifically, the IEP records approved by Zeagler state the following:

    a. (WW's name) is a very cooperative and pleasant student.

    b. He exhibits good effort and understanding of class material.

    c. The teachers that reported back describe WW as polite, cooperative and willing
       to work.

    d. WW is introverted and reluctant to talk.

    e. He needs to ask more questions and advocate for himself.

    f. WW is also distractible in class, but he has had no signs of defiance or disrespect.

50. All of WW's official IEP reports from 2004 to 2008 state that WW needs no behavioral

intervention and can follow regular discipline policies. All of the reports contain positive

comments from his teachers as noted for 2008. One teacher notes that WW "always"

demonstrates appropriate social skills.

51. Officer Lee told WW's Parents and wrote in his report that the Fayetteville School

District had supplied WW's school records to him and convinced him that WW was a

"troublemaker" and the "instigator." Zeagler did not show Lee the internet posts

supplied to him by WW's Mother. For these reasons and because it was a "mutual

fight," Lee stated that WS and IT would not be prosecuted. However, this report was

not delivered to the Prosecutor by either Officer Lee or the Fayetteville School District in

violation of Ark. Code Ann. § 6-17-113, <u>Duty to Report and Investigate Student Criminal Acts</u>.

52. Zeagler's unofficial handwritten notes were published in the <u>Northwest Arkansas Times</u> on April 3, 2008, and disseminated to over 150,000 readers, not to mention the millions more who had access to the electronic form of the paper on the internet. The distribution of WW's unofficial record was a breach of the School District's legal duty to WW and a violation of the Family Education Rights and Privacy Act.

53. Further, the influencing of a police investigation by Zeagler and the Fayetteville School District is a violation of Ark. Code Ann. § 5-54-105, <u>Hindering Apprehension or Prosecution</u>, and Ark. Code Ann. § 5-54-102, <u>Obstructing Governmental Operations</u>.

54. On or about April 5, 2007, textbooks were found by WW containing comments such as, "WW f*cks dogs", "WW f*cks his dad in the ass", and "WW's mom f*cks WW in the ass."

## TENTH GRADE

55. Throughout WW's tenth grade year, students continued to call WW derogatory names related to WW being a homosexual. When Fayetteville Public School students graduate the ninth grade, they continue to FHS. Unfortunately, Zeagler followed WW to FHS, as Zeagler was promoted from Woodland Vice Principal to FHS Vice Principal. Such a promotion furthered the harassment of WW, as Zeagler had already established a policy permitting students to harass and/or physically harm WW without being prosecuted or severely punished for their actions.

56. On October 15, 2007, N.G. (hereinafter "NG") and his brother drove to the bus stop where WW was waiting for the bus with his little sister. NG got out of his car, walked up to WW, and punched him in the face. NG's brother filmed the entire premeditated assault and battery from his vehicle. This video was shown to other students and put on YouTube to boast about NG's assault of WW. This premeditated act by NG and his brother was not reported to the Fayetteville Police Department by Zeagler or the Fayetteville School District in violation of Fayetteville School District policy and Ark. Code Ann. § 6-17-113, Duty to Report and Investigate Student Criminal Acts. Upon information and belief, the Fayetteville School District took no action against NG.

57. On March 23, 2008, Dan Barry of The New York Times wrote an article that appeared on the cover of The New York Times concerning the Fayetteville School District's failure to stop the harassment\bullying of WW. Dan Barry attempted to interview the Fayetteville School District regarding his story, but the Fayetteville School District declined to comment.

58. In response to Dan Barry's article, on March 24, 2008, the Fayetteville School District issued a press release, which was disseminated to at least 300,000 in the State of Arkansas and millions more over the internet, stating that "**the whole story** cannot be told," (emphasis added) leaving the impression that WW has a behavior problem and the attacks on him were justified, despite WW's official school records stating otherwise. The press release also stated that many such attacks are outside of the Fayetteville School District's jurisdiction. Such representation was false in WW's case. One attack was outside of the Fayetteville School District's jurisdiction and it was the

only incident in which the perpetrators were prosecuted. This release was in fact a breach of the Fayetteville School District's legal obligation to WW and a violation of the Family Education Rights and Privacy Act. Further, it was an affirmative act by the Fayetteville School District in an attempt to cover up its numerous violations of the criminal laws of the State of Arkansas.

59. Teachers have talked negatively about WW's academic performance with WW's classmates, encouraging ill-will towards WW. L.B. (hereinafter "LB"), whose father is a FHS teacher, posted on a Facebook group named "Bias" that her father and another teacher discussed with her WW's poor academic performance. LB then stated, "part of me wishes he would get the crap beaten out of him, he is lier [sic] and there is no need for that . . . he is lying!" Teachers sharing WW's academic records with students breaches Fayetteville School District's legal obligation to WW and is a violation of the Family Education Rights and Privacy Act.

60. On or about March 25, 2008, several students, in consultation with Zeagler, an English teacher, and the School District's public relations department, utilizing the theme set forth in the Fayetteville School District's press release, started a Facebook group entitled "**The Whole Story**" (emphasis added). Certain posts on "**The Whole Story**" (emphasis added) continued the harassment of and physically threatened WW. In fact, on or about April 9, 2008, Facebook shut down this group because of the profane threats made by its members against WW and his family. The posts violated Arkansas Cyber-bullying Act codified in the Antibullying Policies, Ark. Code Ann. § 6-18-514(b)(2)(B), as well as Unlawful Computerized Communications, under Ark. Code Ann.

§ 5-41-108, and Harassing Communication, under   Ark. Code Ann. § 5-17-209. Again,

the Fayetteville School District failed to fulfill its obligations under Ark. Code Ann. § 6-

17-113, Duty to Report and Investigate Student Criminal Acts, as it had knowledge of the

creation of the Facebook group.

61.  On April 3, 2008, the Superintendent of the Fayetteville School District told the

Northwest Arkansas Times that "Federal laws prohibit school officials from releasing

information pertaining to individual student discipline issues."  On the same day, John

Brummet, a columnist for The Morning News, reported that  he had received a phone

call from Superintendent New to assure that Mr. Brummet had "the whole story"

(emphasis added).  New referred him to a letter to the editor of the Northwest Arkansas

Times that stated WW was an "instigator and disrespectful to superiors."  It went

further and called his mother an "opportunist."  Such statements were in direct conflict

with substantially all of WW's official school records.  These actions by Superintendent

New were malicious and intended to injure WW and his mother.  Further, New's

statements were an attempt to divert attention from the numerous violations of

Arkansas criminal laws by the Fayetteville School District.  These statements were also a

breach of the Fayetteville School District's legal duty to WW and a violation of the

Family Education Rights and Privacy Act.  Also, on or about April 3, 2008, Alan Wilbourn,

Fayetteville School District's Public Relations Director, presented to media outlets and

interviews that "There are two sides to a story."

62.  Although WW was physically attacked numerous times suffering severe injury and

harassed hundreds of times both over the internet and verbally, on May 23, 2008, it was

reported in the <u>Northwest Arkansas Times</u> that Jim Price, the principal of FHS, stated publicly at the school's graduation ceremony, that, in reference to WW, the "students and teachers demonstrated their remarkable character" and "In my 31 years as an educator, I've never been more proud."  Besides the over 10,000 people in attendance at the graduation, this statement was published to over 150,000 people in newspapers and countless others over the internet.

63.  Such coordinated actions by the Fayetteville School District and Zeagler resulted in hundreds of internet posts, many sent by Fayetteville students during the school day, disparaging and attacking WW and his family.  Such actions by the Fayetteville School District not only defamed WW and his family, but intensified a hostile education environment, making it impossible for WW to receive an education and increasing the chance of physical harm to WW and his family.

## COUNT I:  SEX DISCRIMINATION

### 20 U.S.C. §§ 1681, et seq. (Title IX), 42 U.S.C. § 1983

64.  WW hereby incorporates the previous paragraphs of this Complaint as if stated word for word herein.

65.  The Defendants were aware of the numerous, known acts of sexual harassment directed toward WW while he was at school.

66.  The Defendants acted with deliberate indifference to the acts of harassment by failing to take any action to prevent them, failing to punish and deter the students responsible and failing to protect WW from sexual harassment while at school.

67. The harassment was so severe, pervasive and objectively offensive that it barred WW from access to educational opportunity or benefit, including attendance at FHS.

68. The acts, conduct and behavior of the Defendants caused WW to suffer actual damage as set forth above, including, but not limited to: medical expenses, inconvenience, insult, mental distress, embarrassment, humiliation, anxiety, emotional pain and suffering, potential loss of scholarships for which he might have been eligible, and for financial assistance for college.

69. Plaintiff is entitled to recover from the Defendants reasonable attorneys' fees and expenses as provided by 42 U.S.C. § 1988.

WHEREFORE, WW requests that the Court, after a trial by jury of his claims, enter judgment against the Defendants, jointly and severally, for WW's actual damages or nominal damages as are proven at trial, for attorney fees and expenses pursuant to 42 U.S.C. § 1988, for costs herein, and for any such further legal and equitable relief as the Court deems appropriate.

## COUNT II: SEX DISCRIMINATION

### Fourteenth Amendment, 42 U.S.C. § 1983

70. WW hereby incorporates the previous paragraphs of this Complaint as if stated word for word herein.

71. WW was in the same situation as his female classmates in that they were students at McNair Middle School, Woodland Junior High School, and Fayetteville High School, were under the same supervision of the Fayetteville School District's administrators and teachers, and were subject to the same code of conduct.

72.  The Defendants strictly enforced the District prohibition on sexual harassment when it
     was perpetrated by male students on female students, but failed to similarly protect
     WW because he was male.  On information and belief, this lack of action resulted from
     the Fayetteville School District's official custom or policy and its agents to condone male
     upon male sexual harassment.  This custom or policy reflects deliberate indifference to
     the constitutional rights of WW.

73.  The Defendants failed to act under color of state law.

74.  The unequal enforcement of the Code had a discriminatory effect on the male students
     and, in particular, WW, and was motivated by a desire to discriminate against male
     students who are sexually harassed by other male students.

75.  There is no rational basis for discriminating between male and female students who are
     being sexually harassed.

76.  The Defendants knew or should have known that there is a clearly established right of
     equal protection under both the United States Constitution and the Constitution of
     Arkansas and that their discriminatory failure to enforce the harassment policy in an
     equal manner against WW's harassers violated WW's constitutional rights.

77.  The acts, omissions, conduct, and behavior of the Defendants caused WW to suffer
     actual damage as set forth above, including, but not limited to:  medical expenses,
     inconvenience, insult, mental distress, embarrassment, humiliation, anxiety, emotional
     pain and suffering, potential loss of scholarships and financial assistance.

78.  The acts and omissions of the Defendants were willful, wanton, malicious, and
     outrageous, showed disregard of WW's rights, and were performed knowingly,

intentionally, and maliciously, by reason of which WW is entitled to an award of punitive damages in an amount to be proved at trial.

79. WW is entitled to recover from the Defendants for reasonable attorneys' fees and expenses, as provided by 42 U.S.C. § 1988.

WHEREFORE, WW requests that this Court, after a trial by jury of his claims, enter judgment against the Defendants, jointly and severally, for their actual damages, nominal damages and punitive or exemplary damages as are proven at trial, for attorney fees and expenses pursuant to 42 U.S.C. § 1988, for costs herein, and for any such further legal and equitable relief as the Court deems appropriate.

## COUNT III: DENIAL OF DUE PROCESS: STATE CREATED DANGER

### Fourth, Ninth, and Fourteenth Amendment; and 42 U.S.C. § 1983

80. WW hereby incorporates the previous paragraphs of this Complaint as if stated word for word herein.

81. The Defendants, by failing to enforce their own school policies designed to protect students from bullying and sexual harassment, acted in willful disregard of WW's safety and created an opportunity and atmosphere in which students felt they could harass WW openly and with impunity.

82. It was foreseeable that if WW were bullied and sexually harassed on an ongoing basis, while attending Fayetteville schools, it would have the direct consequence of harming him and possibly causing him to drop out of school.

83. The Defendants created this danger by taking affirmative acts to place WW in a position of danger.

84. The Defendants knew or should have known that there is a clearly established right under the United States Constitution to be free of unjustified instructions on his personal security and that the sexual harassment and bodily harm inflicted on WW violated his constitutional rights.

85. The acts, omissions, conduct, and behavior of the Defendants caused WW to suffer actual damage as set forth above, including, but not limited to medical expenses, inconvenience, insult, mental distress, embarrassment, humiliation, anxiety, emotional pain and suffering, potential loss of scholarships and financial aid.

86. Plaintiff is entitled to recover from the Defendants reasonable attorneys' fees and expenses as provided by 42 U.S.C. § 1988.

87. The acts, omissions, conduct, and behavior of the Defendants were willful, wanton, malicious, and outrageous, showed disregard of WW's rights, and were knowing, intentional, and malicious, by reason of which WW is entitled to an award of punitive damages in an amount to be proved at trial.

WHEREFORE, WW requests that the Court, after a trial by jury of his claims, enter judgment against the Defendants, jointly and severally, for his actual damages or nominal damages, for such punitive or exemplary damages as are proven at trial, for attorney fees and expenses pursuant to 42 U.S.C. § 1988, for costs herein, and for any such further legal relief and equitable relief as the Court deems appropriate.

## COUNT IV: SECTION 504 OF THE REHABILITATION ACT

### 29 U.S.C. § 794 and 42 U.S.C. § 1983

88. WW incorporates the previous paragraphs of this Complaint as if stated word for word herein.

89. WW is a handicapped individual as within the meaning of 29 U.S.C. § 705(20).

90. The Fayetteville School District is an entity that receives federal funds and as such is covered by the mandates of Section 504 of the Rehabilitation Act of 1973.

91. WW's rights secured under the Fourteenth Amendment to the United States Constitution have been violated.

92. The deprivation of WW's rights alleged herein was committed by the Defendants while acting under color of state law.

93. The actions of the Defendants as alleged herein demonstrate deliberate indifference to WW's constitutional rights which indifference resulted in discrimination and deprivation of rights and damages to WW.

94. The Defendants have acted in bad faith and have further committed gross negligence/misjudgment and/or willful acts in spite of their knowledge of WW's disabilities and the discriminatory and tortuous actions of the Defendants.

95. The Defendants discriminated against WW due to his disability. Due to the actions of the Defendants who were carrying out an official policy or custom with respect to the treatment that WW received while enrolled in the Fayetteville School District, WW was harmed.

96. The acts, omissions, conduct, and behavior of the Defendants caused WW to suffer actual damage as set forth above, including, but not limited to medical expenses, inconvenience, insult, mental distress, embarrassment, humiliation, anxiety, emotional pain and suffering, potential loss of scholarships and financial aid.

97. Plaintiff is entitled to recover from the Defendants reasonable attorneys' fees and expenses as provided by 42 U.S.C. § 1988.

WHEREFORE, WW requests that the Court, after a trial by jury of his claims, enter judgment against the Defendants, jointly and severally, for his actual damages or nominal damages, for such punitive or exemplary damages as are proven at trial, for attorney fees and expenses pursuant to 42 U.S.C. § 1988, for costs herein, and for any such further legal relief and equitable relief as the Court deems appropriate.

## COUNT V: AMERICANS WITH DISABILITIES CLAIM

### 42 U.S.C. § 12132; 42 U.S.C § 1983

98. WW incorporates the previous paragraphs of this Complaint as if stated word for word herein.

99. WW is an individual with a disability within the meaning of 42 U.S.C. § 12131(2).

100. The Fayetteville School District is a covered entity as defined by 42 U.S.C. § 12131(1).

101. WW has been discriminated against on the basis of his disability by the Defendants. from this disability.

102. WW's rights secured under the Fourteenth Amendment to the United States Constitution have been violated.

103. The deprivation of WW's rights alleged herein was committed by the Defendants while acting under color of state law.

104. The actions of the Defendants as alleged herein demonstrate deliberate indifference to WW's constitutional rights which indifference resulted in discrimination and deprivation of rights and damages to WW.

105. The Defendants have acted in bad faith and have further committed gross negligence/misjudgment and/or willful acts in spite of their knowledge of WW's disabilities and the discriminatory and tortuous actions of the Defendants.

106. The Defendants discriminated against WW due to his disability.  Due to the actions of the Defendants who were carrying out an official policy or custom with respect to the treatment that WW received while enrolled in the Fayetteville School District, WW was harmed.

107. The acts, omissions, conduct, and behavior of the Defendants caused WW to suffer actual damage as set forth above, including, but not limited to medical expenses, inconvenience, insult, mental distress, embarrassment, humiliation, anxiety, emotional pain and suffering, potential loss of scholarships and financial aid.

108. WW is entitled to recover from the Defendants reasonable attorneys' fees and expenses as provided by 42 U.S.C. § 1988.

WHEREFORE, WW requests that the Court, after a trial by jury of his claims, enter judgment against the Defendants, jointly and severally, for his actual damages or nominal damages, for such punitive or exemplary damages as are proven at trial, for attorney fees and

expenses pursuant to 42 U.S.C. § 1988, for costs herein, and for any such further legal relief and equitable relief as the Court deems appropriate.

## COUNT VI:  OUTRAGE

109. WW incorporates the previous paragraphs of this Complaint as if stated word for word herein.

110. The Defendants' conduct as described herein was extreme, outrageous, and utterly intolerable in a civilized community.

111. The Defendants intended to inflict emotional distress, or should have recognized emotional distress as a likely result of their actions.

112. The Defendants' conduct resulted in anguish or distress to WW.

113. The emotional distress suffered by WW was severe and of a type that no reasonable person should be expected to endure.

114. WW is entitled to punitive damages due to the outrageous conduct of the Defendants.

WHEREFORE, WW requests that the Court, after a trial by jury of his claims, enter judgment against the Defendants, jointly and severally, for his actual damages or nominal damages, for such punitive or exemplary damages as are proven at trial and for any such further legal relief and equitable relief as the Court deems appropriate.

## COUNT VII:  DEPRIVATION OF RIGHT NOT TO BE BULLIED

### Ark. Code Ann. §§ 16-123-105, 6-18-514

115. WW incorporates the previous paragraphs of this Complaint as if stated word for word herein.

116. The Defendants, by failing to enforce their own school policies designed to protect students from bullying acted in willful disregard of WW's safety and created an opportunity and atmosphere in which students felt they could harass WW openly and with impunity.

117. The General Assembly of the state of Arkansas designated that every public school student in this state has the right to receive his or her public education in a public school educational environment that is reasonably free from substantial intimidation, harassment, or harm or threat of harm by another student.

118. It was foreseeable that if WW was bullied and harassed on an ongoing basis, while attending Fayetteville schools, it would have the direct consequence of harming him and possibly causing him to drop out of school.

119. The Defendants created this danger by taking affirmative acts to place WW in a position of danger.

120. The Defendants knew or should have known that there is a clearly established right under the United States Constitution to be free of unjustified intrusions on his personal security and that the sexual harassment and bodily harm inflicted on WW violated his constitutional rights, the Arkansas Constitution and Ark. Code Ann. § 6-18-514, Antibullying Policies.

121. The acts, omissions, conduct, and behavior of the Defendants caused WW to suffer actual damage as set forth above, including, but not limited to medical expenses, inconvenience, insult, mental distress, embarrassment, humiliation, anxiety, emotional pain and suffering, potential loss of scholarships and financial aid.

Page 27 of 33

122. Plaintiff is entitled to recover from the Defendants reasonable attorneys' fees and expenses as provided by Ark. Code Ann. § 16-123-105(b).

123. The acts, omissions, conduct, and behavior of the Defendants were willful, wanton, malicious, and outrageous, showed disregard of WW's rights, and were knowing, intentional, and malicious, by reason of which WW is entitled to an award of punitive damages in an amount to be proved at trial.

WHEREFORE, WW requests that the Court, after a trial by jury of his claims, enter judgment against the Defendants, jointly and severally, for his actual damages or nominal damages, for such punitive or exemplary damages as are proven at trial, for attorney fees and expenses pursuant to Ark. Code Ann. § 16-123-105(b), for costs herein, and for any such further legal relief and equitable relief as the Court deems appropriate.

## COUNT VIII: NEGLIGENT SUPERVISION

124. WW incorporates the previous paragraphs of this Complaint as if stated word for word herein.

125. The Fayetteville School District owes a legal duty to properly supervise students and teachers under their control and custody within the schools and to take reasonable steps to protect students' safety, including the safety of WW.

126. The Fayetteville School District owes a legal duty to comply with the Arkansas Criminal Code, Ark. Code Ann. § 6-17-113, Duty to Report and Investigate Student Criminal Acts, by reporting all actual or threatened acts of violence to the appropriate law enforcement agency and the School Board.

127. The Fayetteville School District recognized that duty and undertook to protect the students, including WW, when they adopted an anti-bullying policy in accordance with Ark. Code Ann. § 6-18-514, Antibullying Policies, which strictly prohibited the intentional harassment, intimidation, humiliation, ridicule, defamation, or threat or incitement of violence by a student against another student or school employee by a written, verbal, electronic, or physical act that causes or create a clear and present danger of physical harm.

128. Under the Family Education Rights and Privacy Act, the Fayetteville School District owed a legal duty to WW to keep his school records confidential.

129. The Fayetteville School District breached its duty to WW by failing to discipline students, known to them, and known to have been involved in harassing WW; by failing to discipline, train, and appropriately supervise administrators and teachers who failed to protect WW from sexual harassment and bullying; by failing to exercise, or cause to be exercised, reasonable care and supervision of students to prevent the on-going sexual harassment and bullying of WW within the school building, classes, and on the way to and from school; and by creating, or permitting an atmosphere wherein students felt they could harass and physically assault WW openly and with impunity.

130. The Defendants' acts of negligence caused WW to suffer actual damage as set forth above, including, but not limited to: medical expenses, inconvenience, insult, mental distress, embarrassment, humiliation, anxiety, emotional pain and suffering, potential loss of scholarships and financial aid for college.

131. The acts, omissions, conduct, and behavior of the Fayetteville School District and Zeagler were willful, wanton, malicious, and outrageous, showed disregard of WW rights and were performed knowingly, intentionally, and maliciously, by reason of which WW is entitled to an award of punitive damages in an amount to be proved at trial.

WHEREFORE, WW requests that the Court, after a trial by jury of his claims, enter judgment against the Defendants, jointly and severally, for his actual or nominal damages as are proven at trial, for such punitive or exemplary damages as are proven at trial, for costs and expenses, and for any such further legal and equitable relief as the Court deems appropriate.

## COUNT IX: DEFAMATION

132. WW incorporates the previous paragraphs as if state word for word herein.

133. WW is a private figure.

134. The Fayetteville School District and Zeagler made statements of or in reference to WW.

135. The Fayetteville School District and Zeagler published these statements to third parties.

136. The Fayetteville School District and Zeagler knew that the statements it published of or concerning WW were false and/or the Fayetteville School District and Zeagler acted with negligence, reckless disregard or malicious intent with regard to the statements that it made concerning WW.

137. The statements made by the Fayetteville School District and Zeagler to third parties about WW were false.

138. The statements made by the Fayetteville School District and Zeagler injured WW's individual reputation, diminished WW's esteem, respect, goodwill and confidence which

WW is held, and/or excite adverse, derogatory or unpleasant feeling or opinions against WW.

139. The statements made by the Fayetteville School District and Zeagler have damaged WW.

WHEREFORE, WW requests that the Court, after a trial by jury of his claims, enter judgment against the Defendants, jointly and severally, for his actual or nominal damages as are proven at trial, for such punitive or exemplary damages as are proven at trial, for costs and expenses, and for any such further legal and equitable relief as the Court deems appropriate.

## COUNT X:  FALSE LIGHT

140. WW incorporates the previous paragraphs as if stated word for word herein.

141. WW is a private figure.

142. The Fayetteville School District and Zeagler gave publicity to a matter concerning WW that placed him before the public in a false light.

143. The false light in which WW was placed would be highly offensive to a reasonable person.

144. The Fayetteville School District and Zeagler had knowledge of or were negligent in or acted in reckless disregard or with malicious intent as to the falsity of the publicized matter and the false light in which WW would be placed.

145. The Fayetteville School District and Zeagler had serious doubts as the truth of the matter that it publicized.

146. WW sustained damages as a result of the Fayetteville School District and Zeagler's actions.

147. WW's damages were proximately caused by the Fayetteville School District and

Zeagler's actions.

WHEREFORE, WW requests that the Court, after a trial by jury of his claims, enter

judgment against the Defendants, jointly and severally, for his actual or nominal damages as

are proven at trial, for such punitive or exemplary damages as are proven at trial, for costs and

expenses, and for any such further legal and equitable relief as the Court deems appropriate.

Respectfully Submitted,

DOSS LAW FIRM, P.A.

By:

D. Westbrook Doss, Jr.
ABA# 87052
Richard E. Walden
Kyle T. Unser
Candace E. Anderson
Doss Law Firm, P.A.
121 N. School Ave.
Fayetteville, AR 72701
(479)303-5500
(800)986-1136 (fax)
west@dosslaw.biz

# AFFIDAVIT: VERIFICATION OF PLEADINGS

State of Arkansas

County of Washington

Curt Wolfe and Penney Wolfe, next friends and father and mother of Plaintiff, states upon oath that they have read the statements contained in the foregoing pleading and they are true and correct to the best of their knowledge and belief.

_____   9·17·08
Curt Wolfe

_____   9-17/08
Penney Wolfe

Subscribed and sworn to before me this __17th__ day of September, 2008

Branch Manager of Retail Services Manager
[Official Title]

My commission expires:
September 24, 2017

OFFICIAL SEAL
GRANT W. CARTER
NOTARY PUBLIC, ARKANSAS
WASHINGTON COUNTY
COMMISSION # 12361814
COMMISSION EXP. 09/24/2017