IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CURT WOLFE AND PENNY WOLFE,
AS NEXT FRIENDS OF W.W.                          PLAINTIFFS

          v.                  Case No. 08-5205

FAYETTEVILLE, ARKANSAS
SCHOOL DISTRICT AND
BYRON LYNN ZEAGLER                               DEFENDANTS

<u>**MEMORANDUM OPINION & ORDER**</u>

Currently before the Court are the Motion to Dismiss filed by Defendants, Fayetteville School District and Byron Lynn Zeagler, and related documents. (Docs. 10, 11, 20, 21, & 23). Defendants assert that Plaintiffs, Curt Wolfe and Penny Wolfe, as next friends of WW, have failed to state causes of action under 42 U.S.C. § 1983 for sex discrimination, perceived sexual orientation discrimination, discrimination based on the anti-homosexual nature of attacks, violation of First Amendment rights, and denial of Due Process. Defendants further assert that Plaintiffs have failed to state causes of action under Arkansas state law for outrage, deprivation of the right not to be bullied, negligent supervision, defamation, and false light. Finally, Defendants contend that certain allegations by Plaintiffs should not be considered due to the operation of the statute of limitations and that punitive damages are not available against the Fayetteville School District. For the reasons set forth herein, Defendants' motion is **GRANTED IN PART AND DENIED IN PART.**

## I. Background

In considering a motion to dismiss, the court, as it is required to do, takes all allegations in the complaint as true and views the facts in the light most favorable to the non-moving party. *Wisdom v. First Midwest Bank of Poplar Bluff,* 167 F.3d 402, 405 (8th Cir. 1999). "While the court must accept allegations of fact as true when considering a motion to dismiss, the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indemnity Corp.*, 280 F.3d 868, 870 (8th Cir. 2002). Based on these standards, Plaintiffs allege as follows:

1. The Fayetteville, Arkansas School District ("FSD" or "District") has a Policy and Procedures Handbook stating that the sexual harassment and/or bullying of students is a violation of District policy.

2. In 1998, the FSD implemented a Commitment to Resolve ("CTR") in response to a complaint by a male student alleging a hostile learning environment based on antigay harassment and violence. The CTR stated that "[f]aculty/staff will be required to report all instances of sexual harassment to their immediate supervisor or appropriate administrative personnel and also refer the student affected to the Title IX Coordinator or Equity Coordinator." The District has not

complied with the CTR.

3.    WW was a student at McNair Middle School ("McNair") in the FSD from August 2003 until May 2005.

4.    Between August and November 2004, students began calling WW a "fag" and a "homo."[1]  The name-calling was reported to school officials, who did nothing in response.

5.    On November 11, 2004, WW was attacked while on a FSD school bus by fellow-students CG and CC.  McNair's principal suspended WW based on other students' statements that WW was the aggressor.  After demand by WW's parents, the principal reviewed the tape recording from the school bus's camera and determined WW was not at fault.

6.    On January 28, 2005, WW's mother informed McNair's principal that fellow-student JW had collected a list of twenty students who planned to physically injure WW.  The principal stated he knew about the list.

7.    On January 31, 2005, JW physically assaulted WW and called WW names, such as "faggot," in the restroom at McNair.

8.    Less than two weeks later, fellow-student CS shoved WW into a locker and called him a "fag."  Despite the complaint of WW's mother, McNair's principal took no action.

---

[1] The Court has reviewed Plaintiffs' Amended Complaint at length and is aware of the extensive nature of the derogatory insults allegedly cast upon WW by students of the FSD.  The Court will repeat those allegations herein only to the extent necessary to resolve the issues raised by Defendants' motion.

9.  Approximately two months later, JW taunted WW outside his home, calling WW a variety of highly offensive names.  Despite the reporting of this incident to school administrators, no action was taken.

10. WW was a student at Woodland Junior High School ("Woodland") from August 2005 until May 2007.  The harassment which began at McNair continued at Woodland.  WW's parents reported several incidents of harassment to school officials which went unpunished.

11. While WW attended Woodland, Byron Zeagler was the vice principal.

12. In response to one of WW's complaints about student harassment, Zeagler asked, "Well, are you gay?"  On another occasion and after harassment by a student, Zeagler said to WW in front of the harassing student, "So you [WW] went to the bathroom and cried like a little baby."  After the harassing student left, Zeagler told WW to "toughen up" and that he should not "go to the bathroom and cry."  No action was taken against the harassing student.

13. On May 10, 2006, in the middle of class, fellow-student BB punched WW.  Zeagler informed WW's mother that he was not going to report the incident to police because WW "got what he deserved."  This conclusion was based on the false premise that WW had made statements about BB's deceased mother.

14. On May 24, 2006, WW was severely beaten by three classmates at Gulley Park in Fayetteville.  WW's parents reported the incident to the District, but no action was taken.

15. On December 3, 2006, Woodland students formed the "Everyone Hates [WW]" group on the website "Facebook."  In its "Group Info," the group stated that "[WW is] a little bitch. and [sic] a homosexual that NO ONE LIKES."  Comments by group members were threatening and generally anti-homosexual in nature. After WW's mother reported the group to Zeagler, he asked, "Well, is he a homosexual?"  Zeagler took no action.

16. On March 8, 2007, fellow-student WS posted to the Facebook group entitled "I Love Watching Fights at School" that he was going to have someone beat up WW.  The next morning, WW's mother reported the posting, to which Zeagler responded that "students said things all the time."  That afternoon, fellow-student IT punched WW in the face.  An eyewitness stated that "The teachers stuck their heads out of the doors and said 'kids cut it out.'  They ignored the attack."  Despite the urging of WW's mother, Zeagler refused to report the incident to police.  Zeagler and other administrators failed to punish the students involved.

17. On March 14, 2007, the day WW returned to school after recovering from the attack, Zeagler pulled WW out in the hall and patted him down and searched his wallet for an IPOD.  This

search was contrary to District policy, as no witnesses were present.  The search revealed no wrongdoing.

18. That same day, Zeagler reported to the Fayetteville Police that WW threatened to get even with IT.  During the evening of March 14, school resource officers were dispatched to WW's home based on the District's report that WW had threatened to bring a gun to school.  No wrongdoing on the part of WW was ever found.

19. Based on Zeagler's refusal to report the March 9 incident to police, WW's mother made a report.  Detective Travis Lee investigated the incident, and Zeagler told the detective that he did not call the police because "both parties were involved."  Zeagler provided Lee with his handwritten notes stating the unfounded allegation that WW had threatened to bring a gun to school.  Zeagler provided no information regarding attackers WS and IT.

20. Zeagler's notes were eventually published in the <u>Northwest Arkansas Times</u> on April 3, 2008.

21. In August 2007, WW began classes at Fayetteville High School ("FHS").  Harassment continued at FHS.

22. That year, Zeagler became the vice principal at FHS.

23. On October 15, 2007, fellow-student NG punched WW while WW was at the bus stop.  NG's brother recorded the incident, showed the tape to other students, and put the video on the website

"YouTube."  The District took no action against NG.

24. On March 23, 2008, Dan Barry of <u>The New York Times</u> wrote an article concerning the FSD's failure to stop the harassment of WW.  The District declined to comment for the article, but in response, the District issued a widely-disseminated press release stating that "the whole story cannot be told" and that many of the attacks were outside the District's jurisdiction. The "whole story" was a theme utilized by the District to address the WW situation.

25. On March 25, 2008, students, in consultation with Zeagler, a teacher, and the District's public relations department, started the Facebook group "The Whole Story" on which harassing and threatening posts were made.  Within weeks, the group was shut down by Facebook.

26. On April 3, 2008, FSD Superintendent Bobby New told the <u>Northwest Arkansas Times</u> that "Federal laws prohibit school officials from releasing information pertaining to individual student discipline issues."  Superintendent New referred the columnist to a letter to the editor so that the columnist could get the "whole story."  The letter stated that WW was an "instigator and disrespectful to superiors" and called his mother an "opportunist."

27. The District's public relations director represented to the media that "[t]here are two sides to a story."

28.   On May 23, 2008, the <u>Northwest Arkansas Times</u> reported that the principal of FHS stated at graduation in reference to WW that "students and teachers demonstrated their remarkable character" and "in my 31 years as an educator, I've never been more proud."

## II.   Discussion

In determining whether a motion to dismiss under Rule 12(b)(6) should be granted, the court must test the legal sufficiency of a complaint.  A plaintiff must state "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007).  In considering a motion to dismiss, the court takes all allegations in the complaint as true and views the facts most favorably to the non-moving party.  *Wisdom,* 167 F.3d at 405.

### A.   Statute of Limitations for Actions under § 1983

At the outset, the Court must address Defendants' contention that all events occurring prior to September 17, 2005 are time barred and, therefore, cannot form the basis of an action under 42 U.S.C. § 1983.  This assertion stems from the facts that Plaintiffs filed their Complaint on September 17, 2008 and that the three-year statute of limitations in Ark. Code Ann. § 16-56-105 is applicable to actions under § 1983.  *Miller v. Norris*, 247 F.3d 736, 739 (8th Cir. 2001).  Plaintiffs counter that events prior to September 17, 2005 can be used to support their § 1983 claims because a "complete

and present cause of action" did not accrue until after September 17, 2005.

It is well established that "[a] cause of action accrues when there are facts enabling one party to maintain an action against another." *Victor Foods, Inc. v. Crossroads Economic Development*, 977 F.2d 1224, 1226 (8th Cir. 1992). Plaintiffs generally allege that the FSD and Vice Principal Zeagler violated WW's constitutional rights by engaging in a discriminatory course of conduct over the span of several years. This is not a case where constitutional rights were allegedly violated based on a single incident or encounter with government officials. Rather, it is a case in which Plaintiffs allege persistent harassment and discrimination which ultimately, and over the course of time, rose to the level of a constitutional violation. Accordingly, while it is impossible to pinpoint the moment at which a constitutional violation may have occurred, the Court cannot categorically state, at least at this point, that all allegations relating to events prior to September 17, 2005 are time barred.

**B.   Failure to State a Discrimination Claim under § 1983**

Defendants assert that Plaintiffs have not stated cognizable causes of action for sex discrimination, perceived sexual orientation discrimination, and discrimination based on the antigay nature of attacks. Particularly, Defendants assert that under § 1983, Plaintiffs can demonstrate neither an official policy nor a

pervasive custom or usage resulting in discrimination. *Ware v. Jackson County, Mo.*, 150 F.3d 873, 880 (8th Cir. 1998). The Court will address each of these arguments in turn.

### 1. Official Policy

A plaintiff may establish municipal liability under § 1983 "by proving that his or her constitutional rights were violated by an 'action pursuant to official municipal policy' . . . ." *Ware*, 150 F.3d at 880 (quoting *Monell v. Department of Soc. Serv.*, 436 U.S. 658, 691 (1978)). An official policy arises when an official, who has the final authority to establish governmental policy in a particular area, makes a deliberate choice to follow a particular course of action from among a variety of alternatives. *Jane Doe "A" v. Special School Dist. of St. Louis County*, 901 F.2d 642, 645 (8th Cir. 1990). Defendants assert that Plaintiffs have failed to allege an official policy established by an official with final policymaking authority that caused the constitutional violations of which Plaintiffs complain.

Whether an official has final policymaking authority is a question of state law. *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737 (1989). Arkansas law is clear that the school board is a school district's authorized policymaker. *See* Ark. Code Ann. § 6-13-620; *Springdale Educ. Ass'n v. Springdale School Dist.*, 133 F.3d 649, 651 (8th Cir. 1998); *Parker v. The Waldron, Arkansas, School Dist.*, 2006 WL 663401, 3 (W.D. Ark. March 14, 2006).

Plaintiffs have not alleged an official policy instituted by the Board of Directors of the FSD which caused injury to WW. In fact, the District's express policy prohibits the discrimination at the heart of Plaintiffs' Amended Complaint.

Plaintiffs contend that even if the FSD Board of Directors is the official policymaker for the school district, it has delegated this role to certain school officials, such as Zeagler, with respect to day-to-day student harassment and enforcement of anti-bullying policies. In making this argument, Plaintiffs have attempted to segment the policymaking role, drawing a distinction between broad final policymaking authority possessed by the school board and day-to-day policymaking authority possessed by officials in schools. This distinction does little more than point out the difference between those officials with policymaking authority and those officials who have discretion in carrying out official policies. The Eighth Circuit Court of Appeals has stated that:

> a very fine line exists between delegating final policymaking authority to an official, for which a municipality may be held liable, and entrusting discretionary authority to that official, for which no liability attaches. The distinction, we believe, lies in the amount of authority retained by the authorized policymakers . . . . [A]n incomplete delegation of authority-i.e., the right of review is retained-will not result in municipal liability, whereas an absolute delegation of authority may result in liability on the part of the municipality.

*Williams v. Butler*, 863 F.2d 1398, 1402 (8th Cir. 1988).

Plaintiffs have made no allegation indicating the delegation of policymaking authority by the FSD Board of Directors. Rather, Plaintiffs' allegations evidence only the exercise of discretion by school officials in carrying out official policies. "When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality." *McGautha v. Jackson County, Mo., Collections Dept.*, 36 F.3d 53, 56 (8th Cir. 1994) (internal quotation omitted). Accordingly, Plaintiffs have failed to plead an official FSD policy that caused constitutional injury to WW.

### 2.  Custom or Usage

Defendants further assert that Plaintiffs have not sufficiently alleged "misconduct so pervasive among non-policymaking employees of the municipality 'as to constitute a 'custom or usage' with the force of law.'" *Ware*, 150 F.3d at 880 (quoting *Monell*, 436 U.S. at 691). A governmental entity cannot be sued based on a theory of *respondeat superior* for injury allegedly inflicted by its employees. *Andrews v. Fowler*, 98 F.3d 1069, 1074 (8th Cir. 1996). Thus, in order to demonstrate 'custom or usage' with the force of law, Plaintiffs must allege:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) The

> plaintiff's injury by acts pursuant to the governmental
> entity's custom, i.e., proof that the custom was the
> moving force behind the constitutional violation.

*Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

Defendants argue that Plaintiffs have not sufficiently alleged knowledge on the part of the Board of Directors of the FSD, relating to either the treatment of WW or the actions of Zeagler, sufficient to trigger § 1983 liability. Defendants rely on *Jane Doe "A"* for the proposition that knowledge of unconstitutional misconduct on part of lower-level school officials is insufficient to impute constructive knowledge to the school board. *Jane Doe "A"*, 901 F.2d at 642. While *Jane Doe "A"* may indeed stand for this proposition, the case is distinguishable on procedural grounds. Specifically, the Eighth Circuit addressed whether the district court erred in granting summary judgment in favor of the defendants. *Id*. at 644. In the present case and under a standard distinguishable from the summary judgment standard, this Court must address whether Plaintiffs have sufficiently alleged knowledge of unconstitutional misconduct on the part of the FSD Board of Directors.

Plaintiffs allege a long and continuous pattern of harassment of WW. They repeatedly allege that they complained to school administrators and to the District regarding the treatment of WW at school. Plaintiffs cite multiple instances of involvement on the part of the Fayetteville Police Department. They state that during

the evening of March 14, school resource officers were dispatched to their home in response to threats allegedly made by WW at school.  Finally, Plaintiffs allege that at least as of March 2008, the FSD responded to media attention directed at the WW story.  This response allegedly included a Facebook group, statements to the <u>Northwest Arkansas Times</u> and its reporters, and at least one press release to tell the "whole story."  Based on Plaintiffs' allegations, the Court simply cannot say that Plaintiffs' Amended Complaint fails to at least create a reasonable inference of knowledge on the part of the FSD's Board of Directors.  Accordingly, Plaintiffs' discrimination claims will not be dismissed, and Defendants' motion is **DENIED.**

## C.  Failure to State a Claim for Violation of First Amendment Rights under § 1983

Defendants assert that Plaintiffs' claim for the violation of WW's First Amendment rights should be dismissed because Plaintiffs have inadequately alleged retaliation.  To establish a First Amendment retaliation claim in the student speech context, a plaintiff must show that: "(1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct."  *Pinard v. Clatskanie School Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006).

For the sake of their argument, Defendants assume that WW's

complaints to school officials were constitutionally protected.  As their basis for dismissal, Defendants claim that Plaintiffs have failed to identify any adverse actions on the part of Defendants that could be construed as retaliatory in nature.  In advancing this argument, Defendants contend that the core of Plaintiffs' allegations is that Defendants did not respond to the complaints of WW to Plaintiffs' satisfaction.

Defendants' contention, to the extent that they assert that mere inaction on the part of school officials cannot form the basis of a First Amendment retaliation claim, is well-taken.  *Morlock v. West Cent. Educ. Dist.*, 46 F. Supp. 2d 892, 921 (D. Minn. 1999). However, in their Amended Complaint, Plaintiffs allege affirmative acts of retaliation.  By way of example, Plaintiffs contend that Zeagler (1) told WW, in response to student harassment and in front of the harassing student, not to cry "like a little baby;" (2) turned over his notes to the Fayetteville Police which contained the allegation that WW had threatened to bring a gun to school and attempted to influence their investigation of an altercation involving WW and another student; and (3) was involved in a Facebook group that made threats against WW.  Also, Plaintiffs claim that the District (1) released WW's student records to the public after a story about him ran in The New York Times; and (2) embarked on an inaccurate public relations campaign to tell the "whole story."  Accordingly, Plaintiffs claim for First Amendment

retaliation cannot be dismissed, and Defendants' motion is **DENIED**.

**D.  Failure to State a Claim for Denial of Due Process under § 1983**

Generally, as a matter of substantive Due Process, the state has no affirmative duty to protect an individual from private violence. *DeShaney v. Winnebago County*, 489 U.S. 189, 197 (1989). There are two important exceptions to this rule.  First, an affirmative duty to protect arises when an individual is held in state custody, and second, a duty arises when the state affirmatively places an individual in a position of danger. *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992).  It is the second exception which is at issue in the present case.

> Under the state-created danger theory, [the plaintiff] must prove (1) membership in a limited, precisely definable group; (2) state conduct which placed Plaintiff at significant risk of serious, immediate, and proximate harm; (3) the risk was obvious or known to the School District; (4) the School District acted recklessly in conscious disregard of the risk; and (5) in total, the School District's conduct shocks the conscience.

*Finch v. Texarkana School Dist. No. 7*, 557 F. Supp. 2d 976, 981 (W.D. Ark. 2008).  Plaintiffs' § 1983 claim for denial of Due Process is made only against Zeagler in his individual capacity. Defendants contend that Plaintiffs have made no allegations of conduct on the part of Zeagler that shocks the conscience.

Plaintiffs allege that over the course of several years, WW was subjected to antigay harassment by his fellow-students in the FSD.  They claim that the response of Zeagler was inadequate,

insensitive, and sometimes in violation of Arkansas law.  They point out, for instance, that Zeagler (1) inquired into WW's sexual orientation on multiple occasions; (2) stated that he "got what he deserved" in response to an altercation with another student; (3) turned over allegedly inaccurate notes to the Fayetteville Police; and (4) was a participant in the District's "whole story" public relations campaign.

To avoid dismissal, Plaintiffs must allege that the "government action complained of is sufficiently outrageous or truly irrational, that is, something more than arbitrary, capricious, or in violation of state law." *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 628 (8th Cir. 2001) (internal quotation omitted).  Actions that can be categorized as grossly negligent or even reckless will simply not suffice. *S.S. v. McMullen*, 225 F.3d 960, 964 (8th Cir. 2000).  As such, the actions or inaction of Zeagler do not shock the conscience.

The above-mentioned instances of alleged misconduct on the part of Zeagler do not transcend that which could fairly be described as "arbitrary, capricious, or in violation of state law." *Young*, 244 F.3d at 628.  The truly egregious conduct at issue in this case was that of students, not of Zeagler.  The students' conduct, while it may evidence an inadequate response on the part of the Zeagler, cannot be imputed to him to make his conduct shocking.  Accordingly, Plaintiffs have failed to allege conduct

that shocks the conscience, and their § 1983 claim for denial of Due Process is **DISMISSED WITH PREJUDICE.**

### E.  Failure to State a Claim for Outrage under Arkansas State Law

Defendants contend that Plaintiffs have not adequately alleged a cause of action for the tort of outrage.  "The test for outrage is an extremely narrow test that is committed by the most heinous conduct."  *Forrest City Mach. Works, Inc. v. Mosbacher*, 312 Ark. 578, 585, 851 S.W.2d 443, 447 (1993).  "Merely describing the conduct as outrageous does not make it so."  *Fuqua v. Flowers*, 341 Ark. 901, 907, 20 S.W.3d 388, 392 (2000).  Extreme and outrageous conduct is conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  *M. B. M. Co., Inc. v. Counce*, 268 Ark. 269, 280, 596 S.W.2d 681, 687 (1980).

As previously stated in the Court's discussion of Plaintiffs' § 1983 claim for denial of Due Process, the egregious conduct on the part of students in the FSD cannot be imputed Zeagler, and Zeagler's conduct did not transcend "all possible bounds of decency."  *Counce*, 268 Ark. at 280, 596 S.W.2d at 687.  Likewise, the conduct of students cannot be directly attributed to the District.  Plaintiffs point out that the District (1) continuously failed to provide an adequate response to the harassment of WW; (2) released WW's student records to the public; and (3) engaged in an

inaccurate public relations campaign.  These actions or inaction are simply not outrageous and cannot support a claim for outrage under Arkansas law.  Plaintiffs' state-law claim for outrage is **DISMISSED WITH PREJUDICE.**

### F.  Failure to State a Claim for Deprivation of the Right not to be Bullied under Arkansas State Law

Defendants assert that deprivation of the right not to be bullied is not actionable under Arkansas law.  Ark. Code Ann. § 6-18-514 states that "every public school student in this state has the right to receive his or her public education in a public school educational environment that is reasonably free from substantial intimidation, harassment, or harm or threat of harm by another student."  Section 6-18-514 does not create a private cause of action.

Plaintiffs contend that violation of § 6-18-514 is actionable under the Arkansas Civil Rights Act ("Act").  The Act states that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of this state or any of its political subdivisions subjects, or causes to be subjected, any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Arkansas Constitution shall be liable to the party injured in an action in circuit court for legal and equitable relief or other proper redress.

Ark. Code Ann. § 16-123-105(a).  The Act further states that a court may look to state and federal decisions interpreting § 1983 when interpreting the Act.  Ark. Code Ann. § 16-123-105(c).  As such, Plaintiffs argue that because § 1983 can generally be used to

redress the deprivation of a statutory right, *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980), the Arkansas Civil Rights Act can also be used to redress the deprivation of a statutory right.

Plaintiffs' argument ignores a key difference between the Arkansas Civil Rights Act and § 1983. The Arkansas Act protects "rights, privileges, or immunities secured by the Arkansas Constitution . . . ." Ark. Code Ann. § 16-123-105(a). Meanwhile, § 1983 protects "any rights, privileges, or immunities secured by the Constitution and laws . . ." of the United States. 42 U.S.C. § 1983. Thus, under the plain language of the Arkansas Civil Rights Act, rights secured by statute are not subject to redress. This Court, without any clear authority based on Arkansas law, will not drastically expand that scope of the Arkansas Act by permitting suit for the deprivation of a statutory right. Therefore, Plaintiffs' claim for deprivation of the right not to bullied, as stated in Ark. Code Ann. § 6-18-514, is **DISMISSED WITH PREJUDICE**.

### G. Failure to State a Claim for Negligent Supervision under Arkansas State Law

Defendants contend that Plaintiffs' claim for negligent supervision should be dismissed. Under Arkansas law, a school district is "immune from liability and from suit for damages except to the extent that they may be covered by liability insurance." Ark. Code Ann. § 21-9-301. Accordingly, Defendants argue that because the FSD's insurance policy does not provide coverage for negligent acts, Plaintiffs' claim should be dismissed.

Defendants' argument is well-taken as a matter of Arkansas law.  However, Defendants have done nothing more than state that insurance coverage is not available.  They have provided the Court with no proof of their assertion, which would enable the Court to rule on this issue.  There is nothing in the record that would compel the Court to treat Defendants' motion as one for summary judgment or on the pleadings.  As such, the Court is limited to the allegations in Plaintiffs' Amended Complaint, and Defendants' unsupported statements cannot serve as a basis for dismissal. Defendants' motion is **DENIED**.

### H.   Failure to State a Claim for Defamation under Arkansas State Law

The Complaint in this matter was filed on September 17, 2008. Defendants correctly point out that the statute of limitations in Arkansas for slander is one year.  Ark. Code Ann. § 16-56-104. Meanwhile, the statute of limitations for libel is three years. Ark. Code Ann. § 16-56-105.  Accordingly, any slanderous statements published before September 17, 2007 and any libelous statements published before September 17, 2005 are not actionable.

In their Amended Complaint, Plaintiffs allege that on March 14, 2007, in response to a police investigation of an assault on WW, Zeagler provided Detective Lee with his handwritten notes stating the false allegation that WW had threatened to bring a gun to school.  Further, Plaintiffs allege that in response to an article in The New York Times about WW on March 23, 2008, the

District issued a widely-disseminated press release stating that "the whole story cannot be told."  Plaintiffs stated that FSD Superintendent New told the Northwest Arkansas Times that "Federal laws prohibit school officials from releasing information pertaining to individual student discipline issues."  The superintendent referred the columnist to a letter to the editor, which stated that WW was an "instigator and disrespectful to superiors" and called his mother an "opportunist."  Finally, at a graduation and in reference to WW, Plaintiffs allege that the FHS principal stated that "students and teachers demonstrated their remarkable character" and "in my 31 years as an educator, I've never been more proud."

Defendants allege that Plaintiffs have failed to state a cause of action for defamation because they have not alleged any objective and verifiable facts that are defamatory in nature. *Faulkner v. Arkansas Children's Hosp.*, 347 Ark. 941, 956, 69 S.W.3d 393, 402 (2002).  Opinions are not defamatory.  In order to determine whether a statement implies an assertion of fact, a court may consider "(1) whether the author used figurative or hyperbolic language that would negate the impression that s(he) was seriously maintaining implied fact; (2) whether the general tenor of the publication negates this impression; and (3) whether the published assertion is susceptible of being proved true or false." *Dodson v. Dicker*, 306 Ark. 108, 111, 812 S.W.2d 97, 98 (1991).  Most of the

statements at issue in the present case are not clearly opinions.

Taking each of the previously-mentioned statements in turn, Zeagler's written statement published to Detective Lee is objectively verifiable.  Whether WW had indeed threatened to bring a gun to school is susceptible to proof or disproof.  As such, the statement is actionable.

The statements in the District's press release and by the superintendent that "the whole story cannot be told," and that "Federal laws prohibit school officials from releasing information pertaining to individual student discipline issues" present a more complicated determination.  Taken in insolation, they do not appear to be defamatory in nature, even if they imply objective fact. However, in construing these statements within the broader context of Plaintiffs' Amended Complaint, the Court must construe the "general tenor of the publication" in favor of Plaintiffs.  As such, the statements create the reasonable inference that they falsely implied wrongdoing and discipline problems on the part of WW.  In short, discovery is needed to reveal the true context and meaning of these statements.

The same can be said in reference to the letter to the editor published in the Northwest Arkansas Times.  In reference to the WW situation, the FSD superintendent referred a columnist to a letter in the paper, which stated that WW was an "instigator and disrespectful to superiors" and called his mother an "opportunist,"

so that the reporter could get the "whole story." The issue becomes whether these statements were adopted by the superintendent and republished to the reporter. This is an issue for discovery.

The same cannot be said in reference to the statement of the FHS principal at a graduation. The principal allegedly stated in reference to the WW situation that "students and teachers demonstrated their remarkable character" and "in my 31 years as an educator, I've never been more proud." This principal's judgment on issues of character and pride are his own. They are not susceptible to being verified in any meaningful way.

Based on the previous, Plaintiffs' defamation claim cannot be dismissed at this stage, and Defendants' motion is **DENIED**.

## I.  Failure to State a Claim for False Light under Arkansas State Law

To recover for the tort of false light, a plaintiff must demonstrate that "the false light in which he was placed by the publicity would be highly offensive to a reasonable person, and (2) that the defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed." *Dodson*, 306 Ark. at 113, 812 S.W.2d at 99.

Defendants contend that Plaintiffs' claim for false light should be dismissed because when Defendants publically addressed the WW situation, Plaintiffs had already placed the matter in public light based on their interview with The New York Times. As

evidenced by the elements of false light in Arkansas, the ability to maintain the tort simply does not turn on who initially placed the matter before the public. While this fact may create a defense or affect that analysis for First Amendment purposes, those arguments are not before the Court. Accordingly, Plaintiffs' false light claim will not be dismissed. Defendants' motion is **DENIED**.

### J.   Punitive Damages under § 1983 and Title IX

Defendants state that claims for punitive damages against the FSD under § 1983 and Title IX should be dismissed. Municipal entities, including school districts, are immune from punitive damages under § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Plaintiffs concede this point. However, Plaintiffs dispute Defendants' assertion that punitive damages are unavailable against the FSD under Title IX. The Court has located authority supporting the contentions of both Plaintiffs and Defendants. This is an issue that will require additional briefing on the part of the parties and will be resolved at a later stage in this litigation. For this reason, Defendants' motion is **DENIED** with respect to punitive damages under Title IX. Nothing in this paragraph should be construed as making any determination as to whether punitive damages may be available against Zeagler in his individual capacity.

## III.  Conclusion

For the reasons recited herein, Defendants' Motion to Dismiss (Doc. 10) is **GRANTED IN PART AND DENIED IN PART.**  The motion is **DENIED** with respect to Plaintiffs' claims for under 42 U.S.C. § 1983 for sex discrimination, perceived sexual orientation discrimination, discrimination based on antigay nature of attacks, and First Amendment retaliation.  Defendants' motion is further **DENIED** with respect to Plaintiffs' state claims for negligent supervision, defamation, and false light.  Defendants' motion is **GRANTED** as to Plaintiffs' § 1983 claim for denial of Due Process and state-law claims for outrage and deprivation of the right not to be bullied, and these claims are **DISMISSED WITH PREJUDICE.**

IT IS SO ORDERED this 26th day of February, 2009.

                              */s/ Robert T. Dawson*
                              Honorable Robert T. Dawson
                              United States District Judge