# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF ARKANSAS
## FAYETTEVILLE DIVISION

| | | |
|---|---|---|
| BILLY WOLFE, | ) | |
| | ) | |
| Plaintiff. | ) | |
| | ) | |
| v. | ) | Case No. 5:08-CV-05205 |
| | ) | |
| FAYETTEVILLE, ARKANSAS SCHOOL | ) | |
| DISTRICT, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF WILLIAM WOLFE'S BRIEF ON JURY SELECTION

The United States Constitution guarantees the right to a jury trial in civil.  U.S. CONST. Amend VII.   Federal courts consistently deferred to and placed great confidence in the verdicts of juries, because jury trials are "essential for preventing miscarriages of justice."  *Duncan v. Louisiana*, 391 U.S. 145, 158 (1968).   Indeed, the Supreme Court has long held that litigants are entitled to fair trials and that a "touchstone of a fair trial is an impartial trier of fact" that is willing to decide the case solely on the evidence before it.  *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 553-54 (1984).

As part of this Court's duty to ensure that the litigants argue their case before an unbiased and impartial jury, the Court should make sure there is an effective voir dire that thoroughly discovers juror bias and prejudice.

The Judiciary Code (Title 28 of the United States Code) also has several provisions governing procedures for selecting a jury, such as individuals who are automatically exempt from jury service based on their occupations, determining whether a juror is qualified for jury service, and excusing many individuals from jury service because they do not have the requisite qualifications.  *See* 28 U.S.C. § 1861-1875.  Section 1866(c) sets forth five specific reasons a

summoned juror may be excused by a district court.  They are:  (1) undue hardship; (2) inability to render impartial service; (3) peremptory challenge; (4) good cause shown; and (5) the court determines excusal is warranted and exclusion is not inconsistent with other provisions of the Jury Selection and Service Act.  Last, Section 1870 entitles civil litigants to three peremptory challenges.

### a.  Voir dire:  Purpose and process

This Constitutional and statutory framework provides the foundation for the procedures and process of voir dire.  Bias and prejudice undermine the principles of justice that the jury system was designed to protect.  Voir dire has several purposes, including seating an impartial jury, and facilitating the appropriate exercise of peremptory challenges.  *Mu'min v. Virginia*, 500 U.S. 415, 431 (1991).  The overriding goal of voir dire is to deeply probe the minds of each venireperson to enable the trial judge to determine whether a juror harbors bias or prejudice that threatens to corrupt the panel.  By finding hidden bias or prejudice, voir dire examination serves to protect the litigants' right to a fair jury trial.  *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 554 (1984).  After discovering juror bias and prejudice, the Court may fulfill its duty of ensuring a fair and impartial jury trial by dismissing those jurors who jeopardize that right.[1]

---

[1] The Court should also consider that unless the parties stipulate otherwise, Rule 48 of the Federal Rules of Civil Procedure requires that jury verdicts be unanimous.  The unanimity requirement makes an already problematic situation even more susceptible to the ill effects of bias or prejudice.  The Court and the parties must guard against bias and prejudice, regardless of whether a unanimous verdict is required, because the bias or prejudice of even a single juror would violate the litigants' right to a fair trial.  Dyer v. Calderon, 151 F.3d 970, 973 (9th Cir. 1998). Unanimity merely puts more power in the hands of each juror.  Thus, if one juror with preconceived opinions or knowledge of evidence, not presented at trial, makes it through voir dire, that lone juror can decide the outcome of the case.  This implication demonstrates the need for an effective voir dire to ensure that this scenario does not occur.

i.       **Voir dire prevents bias and prejudice from tainting trial.**

Before exploring the extent of bias and prejudice among potential jurors, a few terms merit definition. "Bias" is "a preference or inclination that inhibits impartiality." AMERICAN HERITAGE DICTIONARY 83 (3d ed. 1994). "Partial" is defined as "favoring one person or side over another or others." *Id*. at 605. "Prejudice" is defined as "an adverse judgment or opinion formed beforehand without knowledge of the facts." *Id*. at 653.

Unfortunately, bias and prejudice are innate characteristics – often deeply ingrained and concealed from our own self-examination. The Supreme Court recognized this when it said that "[b]ias or prejudice is such an elusive condition of the mind that it is most difficult, if not impossible, to always recognize its existence." Further, the high court said, bias or prejudice can exist in someone "who was quite positive he had no bias and said that he was perfectly able to decide the question wholly uninfluenced by anything but the evidence." *Crawford v. United States*, 212 U.S. 183, 196 (1909).

Prospective jurors often cannot or do not acknowledge their own biases and prejudices when asked general voir dire questions.[2]  As a result, attorneys need wide latitude to question potential jurors. Closed-ended questions that suggest one correct answer – *i.e*., "Mrs. Smith, you could certainly set aside your feelings about the defendant and look at the evidence impartially, couldn't you?" – do not suffice, particularly if such questions come from the judge, a respected authority figure.[3]  These types of closed-ended questions suggest only one answer and unduly influence the potential juror to supply that affirmative answer.

---

[2] One federal appeals court has stated: "We do not believe that a prospective juror is so alert to his own prejudices. Thus it is essential to explore the backgrounds and attitudes of the jurors to some extent in order to discover actual bias, or cause." *United States v. Dellinger*, 472 F.2d 340, 367 (7th Cir. 1972).

[3] A judge holds one of the most esteemed positions in our society.  In the courtroom, the judge is referred to as "Your Honor," is distinguished by attire, is physically elevated over everyone else and has near plenary power. Because of this high status, many potential jurors will seek approval when answering questions from a judge—even

Indeed, the Supreme Court has held that questions requiring potential jurors to self-evaluate their own abilities to be fair and impartial do not adequately assess the competency of potential jurors. *See Morgan v. Illinois*, 504 U.S. 713, 735-36 (1992) (stating that general questions posed to the jury panel that ask potential jurors to self-assess whether they can be fair and impartial are not adequate to elicit responses that reveal bias or prejudice).

When determining whether a prospective juror has a deep-seated and enduring bias that would disqualify the individual from sitting during a particular case, the Court should consider whether the venireperson's opinions would influence his or her judgment in consideration of the case. *Skaggs v. Otis Elevator Co.*, 164 F.3d 511, 515 (10th Cir. 1998) ("To violate due process, the bias must affect the juror's ability to impartially consider the evidence presented at trial.") (citing *Smith v. Phillips*, 455 U.S. 209, 217 (1982)).  If the prospective juror's judgment would be influenced by the predisposition, then the Court should disqualify the venireperson.  *Staley v. Bridgestone/Firestone, Inc.*, 106 F.3d 1504, 1514 (10th Cir. 1997) (holding that a court generally must grant a challenge for cause if actual bias or prejudice is shown; these predispositions are demonstrated by express admissions or other facts that indicate a close connection between the prospective jurors and the case at hand).

Instead of directing rehabilitation questions that suggest only one correct answer, the Court should permit the attorneys to ask open-ended questions that better assess bias and impartiality and that advance the Constitution's guarantee of a fair trial.  The remainder of this Brief discusses methods and techniques for the Court to consider in ensuring a fair and impartial jury trial.

---

at the expense of hiding their true feelings and opinions.  *See* Susan E. Jones, *Judge- Versus Attorney-Conducted Voir Dire: An Empirical Investigation of Juror Candor*, 11 LAW & HUM. BEHAV. 131, 143 (1987) ("Subjects changed their answers almost twice as much when questioned by a judge as they did when interviewed by an attorney…. [I]t appears that there may be implicit pressures in the courtroom toward conformity to a 'perceived standard' that differs depending upon who conducts the voir dire.").

## ii.  Discovering bias and prejudice during voir dire.

If a judge has "a reasonable doubt" about a potential juror's ability to serve impartially, the judge should excuse that potential juror.[4]  In essence, if a potential juror testifies during voir dire that the plaintiff or defendant would, in that potential juror's view, start the trial ahead or behind because of the potential juror's preconceived "world view," notions, biases or opinions, the judge should strike that potential juror for cause.

Furthermore, the ABA report said, courts should not allow potential jurors to "self-qualify" – to issue a blanket assertion that they would be able to cast aside acknowledged biases or prejudice and serve impartial.  Only the Court can decide if a potential juror is impartial.

The trial court is a fact-finder when it rules on challenges for cause.  Because a juror's credibility depends on his or her answers to the court's or counsel's questions as well as his or her demeanor, it is important that the court evaluate both when making such a ruling.

In light of this duty as fact-finder, the Court should not hesitate to strike potential jurors for cause if the Court suspects possible bias or prejudice.

## iii.  Judicial role and responsibility during voir dire.

During voir dire, the nature and extent of questioning by counsel is at the discretion of the Court.  Fed. R. Civ. P. 47.  Trial courts also possess broad discretion when supervising voir dire and when determining which venirepersons are not impartial, provided that voir dire is Constitutionally sufficient. *United States v. Tucker*, 137 F.3d 1016, 1029 (8th Cir. 1998) Although this Court has wide discretion in conducting voir dire, "the exercise of that discretion is subject to 'the essential demands of fairness.'"  *United States v. Amerson*, 938 F.2d 116, 118 (8th

---

[4] *Id.*

Cir. 1991.  When inquiry is limited during voir dire, the parties are left with a deficiency of information that ultimately defeats the purpose of voir dire.  Regrettably, this leads to the litigants relying on stereotypes and gross generalizations when making challenges, rather than making reasoned challenges based on factual indications of impartiality.[5]  Courts must temper their discretion with their duty to protect the cornerstone of our judicial system – the Constitutional right to a fair and impartial jury.

The most effective method for determining bias and partiality is through thorough questioning by counsel for the parties.  Courts have long stressed the importance of voir dire questioning to obtain a fair and impartial jury – the Fifth Circuit has gone so far as to state that "voir dire examination not conducted by counsel has little meaning."  *United States v. Corey,* 625 F.2d 704, 707 (5th Cir. 1980).  "Experience indicates that in the majority of situations questioning by counsel would be more likely to fulfill this need [of sitting an impartial jury] than an exclusive examination in general terms by the court."  *United States v. Ible*, 630 F.2d 389 (5th Cir. 1980).

Historically, voir dire was always conducted by attorneys.[6]  Some trial courts departed from this deeply rooted practice based largely on criticisms falling into the following categories: (1) fear that counsel will merely use voir dire as an opportunity to begin advocacy and attempt to indoctrinate the jury before they are sworn in; (2) concern that attorney involvement interferes

---

[5]The U.S. Supreme Court has deemed that certain challenges based on stereotypes are impermissible as a violation of the Equal Protection Clause.  *See e.g., J.E.B. v. Alabama*, 511 U.S. 127 (1994) (holding peremptory challenges based on gender as unconstitutional); *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614 (1991) (holding that a litigant may not use a peremptory challenge to exclude a juror on the account of the juror's race).

[6]1 Elissa Kraus & Beth Bonora, Jurywork: Systematic Techniques § 2.10[2][c], at 2-72.23 (2d ed. 1998) (1983) ("For many years, all voir dire in United States courts was conducted by attorneys.").

with judicial expediency and places an undue consumption on the Court's time; and/or (3) the risk of embarrassment or discomfort that venirepersons may experience during voir dire.

These concerns can be appropriately dealt with through minimal judicial intervention. The first concern, attorney advocacy during voir dire, can be negated by a court warning that voir dire is not an opportunity to persuade, but rather is used to select an impartial jury. If counsel ignores the warning, then the Court may always terminate the effort and continue voir dire without the aid of counsel.

Second, judicial expediency is important considering the enormous caseload burden that is currently placed on our courts. While efficient administration of jury resources should be encouraged, trial courts cannot sacrifice the litigants' right to a fair and impartial jury. *Art Press, Ltd. v. Western Printing Machinery Co.*, 791 F.2d 616, 619 n.1 (7th Cir. 1986) ("Although . . . this court is sympathetic with trial judges who wish to avoid lengthy voir dire, a trial judge's desire not 'to make the voir dire a big deal in a case that's only going to last a couple of days' is clearly subsidiary to his duty to impanel an impartial jury."). Court-conducted voir dire may be more expeditious than attorney directed voir dire, but it is unlikely to be as effective in discovering unfit jurors. When a court or an attorney conducts voir dire in a cursory manner, it endangers the litigants' constitutional rights and may necessitate a mistrial or even reversal on appeal. Attorney-conducted voir dire can still be organized in a fashion that eliminates the risk of unreasonable consumption of the Court's time, yet satisfies the purpose of voir dire.

Third, juror discomfort is unavoidable even with court-conducted voir dire. If voir dire is to unveil bias and prejudice, this Court must assume the risk of potentially making venirepersons uncomfortable by deeply probing the intimate beliefs of the venirepersons. However,

responsible and effective counsel would not intentionally embarrass or insult a prospective juror, because such conduct would alienate all members of the panel that witness the event.

### iv. Questioning the entire jury panel is efficient and productive.

While we realize that space limitations may compel less than desirable voir dire practices, we note the import of full-panel questioning.  In a further effort to ensure a full and complete voir dire, the Court should permit, if at all possible, counsel to direct their questions to the entire jury panel, rather than a smaller panel on multiple occasions.  Questioning the entire panel serves many purposes.  First, it is a more efficient use of the Court's and the panel members' time, as it prevents counsel from having to repeat questions after venire persons are struck for cause.  Second, it encourages frank and thorough discussion of issues that go to the heart of voir dire – bias and partiality.  A response from a panel member that he or she would have difficulty awarding monetary damages for personal injuries, for example, might prompt other panel members to agree or disagree, which in turn might prompt follow-up questions and further responses.  By directing questions to the entire panel, counsel can more thoroughly and efficiently discover venire persons' biases and prejudices.  Finally, it prevents the discomfort and awkwardness—on the part of counsel, the Court and panel members—of having to request in front of the entire panel that a panel member be struck for cause.  After counsel have questioned the entire panel, counsel and the Court can discuss strikes and retain only those panel members who will be seated as jurors.

### b.  Conclusion

A fair and impartial jury is inextricably linked to the parties' right to a fair trial.  The Constitution, U.S. statutes, Rules of Civil Procedure and case law guarantee litigants' rights to impartial trials by jury.  Thorough voir dire prevents widespread and pervasive juror bias and

prejudice from tainting the trial.  This Court has a duty to oversee a thorough and efficient voir

dire.  The court should use voir dire as a tool for striking potential jurors whose possible bias or

prejudice threatens the litigants' right to a fair trial.

> Respectfully submitted,
>
> THE MCCALLISTER LAW FIRM,
> A Professional Corporation
>
> By: /s/ Brian F. McCallister
>     Brian F. McCallister   Mo. Bar No. 37383
>     917 W. 43rd Street
>     Kansas City, Missouri 64111-3133
>     Telephone:  (816) 931-2229
>     Fax:  (816) 756-1181
>     Email: info@mccallisterlawfirm.com
>
>     David Westbrook Doss , Jr.
>     DOSS LAW FIRM, PA
>     121 N. School
>     Fayetteville, AR 72701
>     Telephone:  (479) 303-5500
>     Facsimile:  (800) 986-1136
>     Email: west@dosslaw.biz
>     kyle@dosslaw.biz
>
>     Arthur A. Benson , II
>     Jamie Kathryn Lansford
>     ARTHUR BENSON ASSOCIATES
>     P.O. Box 119007
>     4006 Central Avenue
>     Kansas City, MO 64171
>     Telephone:  (816) 531-6565
>     Facsimile:  (816) 531-6688
>     Email: abenson@bensonlaw.com
>     jlansford@bensonlaw.com
>     *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 4, 2010, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to the following:

Christopher J. Heller
Ellen Owens Smith
Khayyam M. Eddings
FRIDAY, ELDREDGE & CLARK , LLP
400 West Capitol, Suite 2000
Little Rock, AR 72201-3493
Telephone:  (501) 370-1506
Facsimile:  (501) 376-2147
Email: heller@fec.net
          esmith@fec.net
          keddings@fec.net
*Attorneys for Defendants*

By:   /s/ Brian F. McCallister          
        *Attorney*